MORRIS LAW GROUP
Robert McCoy, No. 9121
Email:  rrm@morrislawgroup.com
Joni A. Jamison, No. 11614
Email:  jaj@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101
Telephone:  (702) 474-9400

LEE, HONG, DEGERMAN, KANG & WAIMEY
Eric D. Olson (*pro hac vice*)
Email:  eolson@lhlaw.com
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660
Telephone:  (949) 419-8713

DICKSTEIN SHAPIRO LLP
Andrew M. Reidy (*pro hac vice*)
Email:  reidya@dicksteinshapiro.com
Catherine J. Serafin (*pro hac vice*)
Email:  serafinc@dicksteinshapiro.com
Joseph M. Saka (*pro hac vice*)
Email:  sakaj@dicksteinshapiro.com
1825 Eye Street NW
Washington, DC  20006
Telephone:  (202) 420-2200

Attorneys for Intervenor Federal Deposit
Insurance Company as Receiver for
Sun West Bank

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

PROGRESSIVE CASUALTY
INSURANCE COMPANY,

          Plaintiff,

    v.

JACKIE K. DELANEY; LARRY E.
CARTER; MARK A. STOUT;
KENNETH TEMPLETON; JOHN

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:11-cv-00678-LRH-PAL

**JOINT PROPOSED ESI
PROTOCOL**

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

SHIVELY; STEPHEN C. KALB;    )
JEROME F. SNYDER; HUGH       )
TEMPLETON; and RICK          )
DRESCHLER,                   )
                             )
              Defendants.    )
                             )
                             )

Plaintiff and Defendants have conferred regarding the production of electronically stored information in their possession, custody, or control ("ESI"), agree to the following, and respectfully move the Court to enter an Order approving the same.

1.    As used herein, "Plaintiff" or "Progressive" means Progressive Casualty Insurance Company, "FDIC-R" means the FDIC in its capacity as Receiver of Sun West Bank ("Sun West" or the "Bank"), and "Ds & Os" means Defendants Jackie K. Delaney, Larry E. Carter, Mark A. Stout, Kenneth Templeton, John Shively, Stephen C. Kalb, Jerome F. Snyder, Hugh Templeton, and Rick Dreschler.  As used herein, the words "Party" or "Parties" include Plaintiff, FDIC-R, and the Ds & Os.

2.    This Protocol, including the provisions set forth in Exhibit A, applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Insofar as it relates to ESI, this Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any subpoena issued pursuant to that rule, in all instances in which the provisions of Fed. R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, or 37. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Rule 45(c)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises. The Parties agree that this Protocol will serve as a guideline for any subpoena for documents issued to ABA Insurance Services Inc. ("ABAIS"), Progressive's managing general agent, in this matter.  The Parties shall

meet and confer regarding the appropriateness of this Protocol with respect
to any subpoena to ABAIS.  Nothing in this Protocol shall be deemed to
constitute a waiver of any objections ABAIS may have with respect to any
such subpoena.  Nothing in this Protocol shall be deemed to prevent a
Party from seeking the Court's intervention with respect to any issues that
may arise regarding the application of this Protocol to a subpoena issued to
ABAIS and/or any objections ABAIS may have with respect to any such
subpoena if the Parties are unable to resolve any such issues or objections
without the Court's assistance.  Likewise, nothing in this Protocol shall be
deemed to prevent any other Party from opposing any relief sought from
the Court.

       3.     In this Protocol, the following terms have the following
meanings:

       A.    "Metadata" means: (i) information embedded in a
Native File, including but not limited to the information identified in
Exhibit A hereto, that is not ordinarily viewable or printable from the
application that generated, edited, or modified such Native File; and (ii)
information generated automatically by the operation of a computer or
other information technology system when a Native File is created,
modified, transmitted, deleted, or otherwise manipulated by a user of such
system.  Metadata is a subset of ESI.

       B.    "Native File(s)" means ESI in the electronic format
of the software application in which such ESI is normally created, viewed,
and/or modified. Native Files are a subset of ESI.  Native Files include, but
are not limited to, the files identified in Exhibit A.

       C.    "Static Image(s)" means a representation of ESI
produced by converting a Native File, including but not limited to the
types of files identified in Exhibit A, into a standard image format capable

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

of being viewed and printed on standard computer systems. In the absence of agreement of the Parties or order of Court, a Static Image, when provided, should be provided in 300 dpi resolution, single-page black and white CCITT Group IV Tagged Image File Format (TIFF or .TIF files). If a TIFF or .TIF file cannot be created, then the Static Image should be provided in Portable Document Format (PDF).

4.      Notwithstanding the protocols set forth in this Protocol, each Party shall produce any and all ESI it intends to rely upon in support of any claim or defense with respect to this matter.

5.      In accordance with Federal Rule of Evidence 502(d), to the extent any Party or subpoena recipient discloses a communication or information covered by the attorney-client privilege, work-product doctrine, or any other applicable privilege(s) or protection(s) (collectively "Privilege") that Privilege is not waived by disclosure connected with the litigation pending before the Court, and the disclosure is also not a waiver in any other federal or state proceeding. Upon discovery by any Party or recipient of a subpoena that produces documents subject to this Protocol that it inadvertently disclosed materials it believes to be protected by Privilege, that Party or subpoena recipient shall promptly notify all Parties or their counsel in writing of the disclosure, identify the document that contains or consists of material believed to be Privileged, and immediately take steps to prevent further disclosure of such material. The provisions of Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the Parties and any subpoena recipient that produces documents subject to this Protocol with respect to any such material. Similarly, if any Party receives ESI from a producing Party or subpoena recipient that it reasonably believes the producing Party or subpoena recipient may have inadvertently produced because it clearly contains information that may be protected by the

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

attorney-client privilege, work-product doctrine, or any other privileges or protections, the receiving Party shall notify the producing Party or subpoena recipient that it believes that such ESI may have been inadvertently produced.  The provisions of Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the Parties and any subpoena recipients that produce documents subject to this Protocol with respect to any such material.  To the extent the Parties or subpoena recipients disagree regarding the application of these principles to any such material, or challenge the privileged nature of such material, the receiving Parties shall not make use of the material in question until the matter is resolved by the Court.

6.   Nothing in this Protocol requires Progressive, FDIC-R, or the Ds & Os to produce again information that was produced before this action was commenced and/or before this Protocol has been entered by the Court.  The Parties reserve the right to address how to deal with any productions made before the action commenced.

7.   The Parties have discussed whether the Party receiving ESI should be required to pay to the Party producing ESI six cents ($0.06) per Static Image for all ESI produced in Static Image format.  The Parties have agreed to defer resolution of this issue until a later date.  In the event that the Parties are unable to reach agreement regarding this issue, all Parties reserve the right to raise this issue with the Court if they deem it to be necessary.  Moreover, nothing in this Protocol shall be deemed to constitute a waiver of any Party's right to do so or a waiver of any Party's right to contest any such effort.  Other than the six cents ($0.06) per page addressed in this Paragraph, the Parties agree that all other costs associated with the production of ESI shall be borne by the producing Party unless otherwise specified in this Protocol.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

8.  Nothing in this Protocol shall preclude any Party from seeking any documents in discovery. However, except for good cause shown, further agreement of the Parties, or as provided in this Protocol, the procedures set forth in this Protocol shall be the only way in which ESI shall be retrieved and produced in this matter.

9.      The Parties shall exchange a list of electronic data sources that will be searched for relevant ESI and a list of all custodians whose electronic files will be searched for relevant ESI. Absent agreement among the Parties otherwise, all searches shall be run against all electronic data sources and custodians' files disclosed by the producing Party. In the event a specific search for ESI will be run against only certain discrete data sources or a subset of custodians' files, then the Parties shall exchange a list of the discrete data sources and/or the subset of custodians' files that will be searched. If a Party contends the production of materials sought from one or more custodians is unduly burdensome or that the list of custodians whose electronic files will be searched is too broad or too narrow, the Parties agree to meet and confer to attempt to resolve the issue. Nothing in this Protocol shall prevent a Party from seeking the Court's intervention with respect to any such issue if the Parties are unable to resolve it themselves or from preventing any other Party from opposing any relief sought.

### PROGRESSIVE ESI

10.      Progressive represents it is in possession, custody, or control of the following categories of ESI: (1) Email; (2) General Documents; (3) Website Documents; and (4) Progress Documents. "General Documents" consists of all electronic documents that may include relevant ESI not encompassed solely in categories (1), (3), or (4). In addition to the foregoing, Progressive has certain ESI stored on backup tapes ("Backup

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

Documents"). Upon restoration from backup, Backup Documents also would be in Progressive's possession. Backup Documents are addressed in Paragraph 17 below. Progressive represents that, to the best of its knowledge, this is a full, complete, and accurate listing of all categories of ESI from which materials relevant to this action may be retrieved. FDIC-R and the Ds & Os reserve the right to seek additional ESI in the possession, custody, or control of Progressive or ABAIS, and nothing contained herein shall be deemed to constitute a waiver of their right to do so. Progressive and ABAIS reserve the right to object to any efforts by FDIC-R or the Ds & Os to seek any such additional ESI, to the extent it exists.

11.     Subject to the terms of this Protocol, including, but not limited to, Paragraph 9, and the Confidentiality Agreement and Stipulated Protective Order in this matter (Docket No. 63), and pursuant to an Order of this Court which shall be deemed made by approval of this Protocol, Progressive shall produce relevant, non-privileged documents in categories (1) and (2), collectively referred to as the "Progressive Searchable ESI," in accordance with the procedures set forth in this Protocol and in the format specified in Exhibit A hereto. Progressive shall produce relevant, non-privileged ESI in category (3) as specifically addressed in Paragraph 15 below. Progressive shall produce relevant, non-privileged ESI in category (4) as specifically addressed in Paragraph 16 below.

12.     The Parties shall collectively agree upon a reasonable set of search terms to run across the processed Progressive Searchable ESI. If the Parties are unable to agree upon search terms after conferring in good faith, any Party may raise the issue with the Court by motion. In order to facilitate the good faith negotiation of search terms among the Parties, with respect to any search term requested by FDIC-R or the Ds & Os but objected to by Progressive on the grounds that it is overly broad or unduly

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

1  burdensome, Progressive shall provide search term hit reports to FDIC-R
2  and the Ds & Os which identify the number of unique documents that hit
3  upon each identified search term requested by FDIC-R or the Ds & Os and
4  objected to by Progressive.  This search term process will be iterative and
5  therefore might require several iterations of revised search terms and hit
6  reports.  If requested by FDIC-R or the Ds & Os with respect to any search
7  term to which Progressive objects on the grounds that it is overly broad or
8  unduly burdensome, Progressive shall also produce statistically random
9  subsets of search-term-positive, non-privileged data for FDIC-R and the Ds
10  & Os to assess the utility of the search terms prior to final agreement on
11  search terms ("test production"). The Parties shall meet and confer to
12  determine the specific parameters of the test production, including, but not
13  limited to, the sample size and data sources from which the test production
14  will be derived.  The Parties reserve the right to seek the Court's
15  intervention with respect to such issues if they are unable to reach
16  agreement. To the extent there is a dispute among the Parties regarding
17  documents retrieved by the search terms that Progressive does not
18  produce, or an issue arises regarding the timeliness of Progressive
19  producing the documents, the Parties shall meet and confer and determine
20  whether there are ways to resolve the dispute without Court intervention.
21  In the event that the Parties are unable to reach agreement regarding this
22  issue, all Parties reserve the right to raise the issue with the Court.
23  Progressive shall also provide FDIC-R and the Ds & Os with an exception
24  report listing any data that could not be searched or processed ("Exception
25  Documents").  The report shall include, without limitation, the file
26  extension for each Exception Document contained in the report.

27        13.    After the Parties have agreed upon search terms or
28  established search terms with the assistance of the Court, Progressive shall

apply the search terms to the documents in categories (1) and (2), review the documents retrieved, and produce to FDIC-R and the Ds & Os, at its option, either all non-privileged documents captured by the agreed-upon search terms or all non-privileged documents captured by the agreed-upon search terms that are responsive to FDIC-R's or the Ds' & Os' document requests and relevant pursuant to the Federal Rules of Civil Procedure, subject to any proper objections Progressive may have to such requests. Progressive shall advise FDIC-R and the Ds & Os which option it selects. FDIC-R and the Ds & Os agree that Progressive need not review the documents captured by the agreed-upon search terms for relevance or responsiveness prior to production but that Progressive may do so at its option. Progressive shall advise FDIC-R and the Ds & Os whether it has reviewed documents for relevance or responsiveness prior to production and, if so, whether it has withheld documents on the grounds that they are not relevant or responsive. Progressive shall produce documents in the format specified in Exhibit A. The Parties agree that Progressive will, as practicable, produce documents on a rolling basis and will produce documents as soon as practicable after the Parties have agreed upon search terms or established search terms with the assistance of the Court. To the extent Progressive does not produce documents retrieved by the agreed-upon search terms based on its determination that such documents are not relevant or an issue arises regarding the timeliness of Progressive's production, the Parties shall meet and confer and determine whether there are ways to resolve the issue without Court intervention. In the event that the Parties are unable to reach agreement regarding this issue, all Parties reserve the right to raise the issue with the Court.

14.    The Parties may make multiple, reasonable requests for production of ESI utilizing this process. In the event the producing party

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

1  believes a subsequent request is not reasonably calculated to lead to the

2  discovery of admissible evidence and objects to the subsequent request,

3  then the burden shall be on the requesting party to demonstrate that such

4  subsequent request is reasonable and necessary.

5          15.    Progressive represents that ESI in category (3), Website

6  Documents, consists of: (a) the website located at http://www.abais.com

7  as of August 20, 2012 (the "ABAIS Website"); (b) previous iterations of the

8  ABAIS Website, if any, maintained by ABAIS; (c) the website located at

9  http://banks.progressive.com as of March 8, 2013 (the "Progressive

10  Website"); and (d) previous iterations of the Progressive Website, if any,

11  maintained by ABAIS or Progressive.  Progressive shall produce the ABAIS

12  Website (item (a)) and the Progressive Website (item (c)) in a form that will

13  allow them to be viewed in their entirety in a standard web browser, i.e.,

14  Internet Explorer, Firefox, Chrome.  Progressive shall produce previous

15  iterations of the ABAIS Website (item (b)), if any, and previous iterations of

16  the Progressive Website (item (d)), if any, in this same form where

17  available and, when not available in a readable electronic format, by

18  printing out copies and producing them in accordance with the procedures

19  for producing physical documents agreed to by the Parties.  Progressive

20  shall produce all documents within category (3) as soon as practicable after

21  execution of this Protocol by all Parties.

22          16.    Progressive represents that ESI in category (4), Progress

23  Documents, consists of documents maintained in a proprietary computer

24  system utilized by Progressive, commonly referred to as "Progress."

25  Among other things, Progress contains information also contained in

26  physical copies of Progressive's claim and underwriting files.  Progressive

27  represents that ESI stored in Progress is not amenable to production as ESI

28  in accordance with the terms of this Protocol.  Therefore, Progressive shall

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

produce all relevant, non-privileged documents and information stored in Progress, that it is not otherwise producing as part of its production of physical documents, in a manner that most accurately reflects the appearance and content of such documents when viewed using the Progress software. At the time it produces such documents, Progressive shall provide a description of the manner in which it selected or procured them and of the ways in which the appearance or content of the documents as produced differs from the appearance or content of the documents when viewed using Progress. Nothing in this paragraph shall be deemed to constitute acknowledgement or agreement by FDIC-R or the Ds & Os concerning Progressive's representation that ESI stored in Progress is not amenable to production as ESI in accordance with the terms of this Protocol. Further, the Parties reserve the right to re-address the methodology of how ESI in this category is produced in the event it can be produced in its electronic format. In the event that the Parties are unable to reach agreement regarding this issue, all Parties reserve the right to raise this issue with the Court if they deem it to be necessary. Moreover, nothing in this Protocol shall be deemed to constitute a waiver of any Party's right to do so or a waiver of any Party's right to contest any such effort. Progressive shall produce all documents within category (4) as soon as practicable after execution of this Protocol by all Parties.

17.   Progressive represents that Backup Documents consist of documents maintained by Progressive on backup tapes. Progressive shall provide to FDIC-R and the Ds & Os a description of ESI maintained solely in the form of Backup Documents. Progressive contends that Backup Documents are not readily available and that the production of Backup Documents by Progressive would be unduly burdensome and would require the expenditure of significant time and resources. For that reason,

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1  Progressive does not intend to produce Backup Documents.  In the event

2  that FDIC-R or the Ds & Os believe that Progressive should produce such

3  documents, they may file a motion with the Court seeking an order

4  compelling such production.  Nothing contained herein shall be deemed to

5  constitute a waiver of their right to do so or a waiver of Progressive's right

6  to contest any such motion.

7       18.    Progressive has converted, or will convert, to electronic

8  format, ESI, relevant documents that exist solely in physical, hard-copy

9  format.  With respect to hard-copy documents Progressive converted to ESI

10  prior to the execution of this Protocol in this matter, such documents were

11  subject to an Optical Character Recognition ("OCR") process when they

12  were collected.  To the extent not previously produced by Progressive prior

13  to execution of this Protocol, Progressive shall produce such relevant, non-

14  privileged ESI in the format specified in Exhibit A along with metadata

15  created when the hard-copy documents were converted to ESI, if any.  For

16  purposes of this paragraph, metadata means the following: (1) Custodian

17  (Name of Custodian from whom the document was collected); (2) Author;

18  (3) Doc Title (Title of file or email subject); (4) Doc Date (Visible data on

19  loose files or Sent Date on emails); (5) Doc Type; (6) Page Count; (7) Bates

20  Begin (Beginning Production Number); and (8) Bates End (Ending

21  Production Number).  Progressive shall not be required to create metadata

22  with respect to such hard-copy documents that does not presently exist.

23  The load file shall indicate document breaks.  With respect to relevant,

24  hard-copy documents Progressive has not yet converted to ESI, Progressive

25  will convert such documents to ESI and shall subject them to an OCR

26  process.  Progressive shall produce such relevant, non-privileged ESI in the

27  format specified in Exhibit A.  The load file shall indicate document breaks,

28  and, where readily available, the metadata created when the hard-copy

documents were converted to ESI.  Nothing in this paragraph shall be deemed to require Progressive to produce again any hard-copy documents it produced prior to execution of this Protocol, regardless whether its prior production(s) conformed to the requirements of this Protocol.

19.     Documents withheld by Progressive on the basis of privilege, work product, or any other privilege or protection shall be logged, and Progressive shall provide the log to FDIC-R and the Ds & Os together with Progressive's ESI production or within thirty (30) days after its  production of the ESI material the privileged documents relate to.

**FDIC-R ESI**

20.     FDIC-R represents it is in possession, custody, or control of ESI related to Sun West Bank ("SWB ESI").  The SWB ESI includes the following databases: (1) S5 Forensic Data; (2)  S5 Scanned Documents; (3) S5 Forensic Data Email; (4) various loan-related databases ( S5 Director Loan Reports, S5 Laserpro Loan Origination Information, S5 OMS Loan Info); and (5) network file shares database (S5 Fileshares).  A complete list of available databases is attached hereto as Exhibit B.  FDIC-R represents that, to the best of its knowledge, Exhibit B is a full, complete, and accurate listing of all categories of ESI from which materials relevant to this action may be retrieved.  As it relates to ESI in the possession or control of FDIC-R, this Protocol applies only to SWB ESI as defined herein.  Progressive and the Ds & Os reserve the right to seek additional ESI in the possession, custody, or control of the FDIC and/or FDIC-R, and nothing contained herein shall be deemed to constitute a waiver of their right to do so.  FDIC-R and the FDIC-Corporate reserve the right to object to any efforts to seek any such additional ESI, to the extent it exists.

21.     Subject to the terms of this Protocol, including, but not limited to, Paragraph 9, and the Confidentiality Agreement and Stipulated

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

1    Protective Order in this matter (Docket. No. 63), and pursuant to an Order

2    of the Court which shall be deemed made by approval of this Protocol,

3    FDIC-R shall produce relevant, non-privileged documents from databases

4    (1) through (4) in accordance with the procedure set forth in this Protocol

5    and in the format specified in Exhibit A hereto.

6             22.    The Parties shall collectively agree upon a reasonable set

7    of search terms to run across the processed SWB ESI.  If the Parties are

8    unable to agree upon search terms after conferring in good faith, any Party

9    may raise the issue with the Court by motion.  In order to facilitate the

10   good faith negotiation of search terms among the Parties, with respect to

11   any search term requested by Progressive or the Ds & Os but objected to by

12   FDIC-R on the grounds that it is overly broad or unduly burdensome,

13   FDIC-R shall provide search term hit reports to Progressive and the Ds &

14   Os which identify the number of unique documents that hit upon each

15   identified search term requested by Progressive or the Ds & Os and

16   objected to by FDIC-R.  This search term process will be iterative and

17   therefore might require several iterations of revised search terms and hit

18   reports.  If requested by Progressive or the Ds & Os with respect to any

19   search term to which FDIC-R objects on the grounds that it is overly broad

20   or unduly burdensome, FDIC-R shall also produce statistically random

21   subsets of search-term-positive, non-privileged data for Progressive and

22   the Ds & Os to assess the utility of the search terms prior to final agreement

23   on search terms ("test production").  The Parties shall meet and confer to

24   determine the specific parameters of the test production, including, but not

25   limited to, the sample size and data sources from which the test production

26   will be derived.  The Parties reserve the right to seek the Court's

27   intervention with respect to such issues if they are unable to reach

28   agreement.  FDIC-R shall also provide Progressive and the Ds & Os with

an exception report listing any data that could not be searched or processed ("Exception Documents").  The report shall include, without limitation, the file extension for each Exception Document contained in the report.

23.    After the Parties have agreed upon search terms or established search terms with the assistance of the Court, FDIC-R shall apply the search terms to the documents in databases (1) through (4) and, at its option, may perform an initial review of the documents captured by the search terms for privilege, responsiveness, or relevance pursuant to the Federal Rules of Civil Procedure.  FDIC-R shall make the documents available to Progressive and the Ds & Os in an online Relativity database as soon as practicable after the Parties have agreed upon search terms or established search terms with the assistance of the Court.  FDIC-R shall advise Progressive and the Ds & Os whether it has reviewed documents for privilege, responsiveness, or relevance prior to making them available in Relativity and, if so, whether there are any documents retrieved by the search terms that FDIC-R is not making available to Progressive and the Ds & Os based on that review.  To the extent there is a dispute among the Parties regarding documents retrieved by the agreed-upon search terms that FDIC-R does not make available in Relativity or an issue arises regarding the timeliness of FDIC-R making documents available in Relativity, the Parties shall meet and confer and determine whether there are ways to resolve the dispute without Court intervention.  In the event that the Parties are unable to reach agreement regarding this issue, all Parties reserve the right to raise the issue with the Court.  The Parties agree that FDIC-R is not required or obligated to conduct a relevancy, responsiveness, or privilege review on the documents captured by the agreed-upon search terms prior to making the documents available on Relativity.  The Parties further agree that FDIC-R will not be deemed to

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

have waived any privilege by not conducting a privilege review before making documents available on Relativity.  Once FDIC-R has made documents available to Progressive and the Ds & Os on Relativity, Progressive and the Ds & Os will review the documents made available by FDIC-R and advise FDIC-R which, if any, of those documents they want FDIC-R to produce to them.  FDIC-R shall then produce all such non-privileged documents identified by Progressive or the Ds & Os in the format specified in Exhibit A.  The Parties agree that FDIC-R will, as practicable, produce documents on a rolling basis and will produce documents as soon as practicable after Progressive and/or the Ds & Os have provided notice to FDIC-R as to which documents they want produced.  In the event that a dispute arises among the Parties regarding documents identified for production by Progressive and/or the Ds & Os but withheld by FDIC-R, or an issue arises regarding the timeliness of FDIC-R's production, the Parties shall meet and confer and determine whether there are ways to resolve the issue without Court intervention.  In the event that the Parties are unable to reach agreement regarding this issue, all Parties reserve the right to raise the issue with the Court.

24.    The Parties may make multiple, reasonable requests for production of ESI utilizing this process.  In the event the producing party believes a subsequent request is not reasonably calculated to lead to the discovery of admissible evidence and objects to the subsequent request, then the burden shall be on the requesting party to demonstrate that such subsequent request is reasonable and necessary.

25.    With respect to database (5), the database has not been processed or OCR'd and is not in a full text searchable form pursuant to this Protocol.  Database (5) is searchable by the current limited metadata of file name and file path.  FDIC-R, after the Parties have agreed-upon search

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101 · 702/474-9400 · FAX 702/474-9422

1   terms or established search terms with the assistance of the Court, shall

2   apply the search terms to the metadata available in database (5) and, at its

3   option, may perform an initial review of the documents captured by the

4   search terms for privilege, responsiveness, or relevance pursuant to the

5   Federal Rules of Civil Procedure.  As soon as practicable after the Parties

6   have agreed upon search terms or established search terms with the

7   assistance of the Court, FDIC-R shall make the documents available to

8   Progressive and the Ds & Os in an online Relativity database.  To the extent

9   there is a dispute among the Parties regarding documents retrieved by the

10  agreed-upon search terms that FDIC-R does not make available in

11  Relativity or an issue arises regarding the timeliness of FDIC-R making

12  documents available in Relativity, the Parties shall meet and confer and

13  determine whether there are ways to resolve the dispute without court

14  intervention.  The Parties agree that FDIC-R is not required nor obligated

15  to conduct a relevancy, responsiveness, or privilege review on the

16  documents captured by the agreed-upon search terms prior to making the

17  documents available on Relativity.  The Parties further agree that FDIC-R

18  will not be deemed to have waived any privilege by not conducting a

19  privilege review before making documents available on Relativity.  Once

20  FDIC-R has made documents available to Progressive and the Ds & Os on

21  Relativity, Progressive and the Ds & Os will review the documents made

22  available by FDIC-R and advise FDIC-R which, if any, of those documents

23  they want FDIC-R to produce to them.  FDIC-R shall then produce all such

24  non-privileged documents identified by Progressive or the Ds & Os in the

25  format specified in Exhibit A.  The Parties agree that FDIC-R will, as

26  practicable, produce documents on a rolling basis and will produce

27  documents as soon as practicable after Progressive and/or the Ds & Os

28  have provided notice to FDIC-R as to which documents they want

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

produced.  In the event that a dispute arises among the Parties regarding documents identified for production by Progressive and/or the Ds & Os but withheld by FDIC-R, or an issue arises regarding the timeliness of FDIC-R's production, the Parties shall meet and confer and determine whether there are ways to resolve the issue without Court intervention.  In the event that the Parties are unable to reach agreement regarding this issue, all Parties reserve the right to raise the issue with the Court. Additionally, upon review of the documents produced, if Progressive or the Ds & Os determine that they require OCR searches of this database, the Parties will discuss and attempt to reach an agreement regarding the OCR processing and production of responsive, non-privileged documents in this database and the costs involved in doing so.  If the Parties are unable to reach an agreement, the Parties will have the right to address issues relating to this database with the Court.  Nothing contained herein shall be deemed to constitute acknowledgement or agreement by Progressive or the Ds & Os that the means of production of documents contained in database (5) described in this paragraph are sufficient or that FDIC-R is not required to OCR the documents contained in database (5) at its expense to facilitate retrieval and production of relevant ESI contained in that database. Nothing contained herein shall be deemed to constitute a waiver by FDIC-R of its right to object to any effort by Progressive or the Ds & Os to require it to OCR the documents contained in database (5).

26.    Progressive shall pay a monthly fee of $10 per gigabyte of ESI hosted on the Relativity database until such time as Progressive determines that such ESI need no longer be hosted on the Relativity database and provides written notification of this to FDIC-R and the Ds & Os.  Progressive will pay the monthly fee for the entire month in which it provides such notification to FDIC-R and the Ds & Os.  In no event shall

Progressive be required to pay the monthly fee for any period of time after the month of notification. If one or more of the Ds & Os wish for such ESI to be hosted on the Relativity database after Progressive has provided such notification, the Ds & Os shall pay the monthly fee of $10 per gigabyte beginning the month after that in which Progressive provides notice to FDIC-R and the Ds & Os that such ESI need no longer be hosted in Relativity and continuing until such time as the Ds & Os notify FDIC-R that such ESI need no longer be hosted on the Relativity database. The Ds & Os will pay the monthly fee for the entire month in which they provide such notification to FDIC-R. In no event shall the Ds & Os be required to pay the monthly fee for any period of time after the month of notification.

27. FDIC-R has converted, or will convert, to electronic format, ESI, relevant documents that exist solely in physical, hard-copy format. With respect to hard-copy documents FDIC-R converted to ESI prior to the execution of this Protocol in this matter, such documents were subject to an Optical Character Recognition ("OCR") process when they were collected. To the extent not previously produced by FDIC-R prior to execution of this Protocol, FDIC-R shall produce such relevant, non-privileged ESI in the format specified in Exhibit A along with metadata created when the hard-copy documents were converted to ESI, if any. For purposes of this paragraph, metadata means the following: (1) Custodian (Name of Custodian from whom the document was collected); (2) Author; (3) Doc Title (Title of file or email subject); (4) Doc Date (Visible data on loose files or Sent Date on emails); (5) Doc Type; (6) Page Count; (7) Bates Begin (Beginning Production Number); and (8) Bates End (Ending Production Number). FDIC-R shall not be required to create metadata with respect to such hard-copy documents that does not presently exist. The load file shall indicate document breaks. With respect to relevant,

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

1  hard-copy documents FDIC-R has not yet converted to ESI, FDIC-R will

2  convert such documents to ESI and shall subject them to an OCR process.

3  FDIC-R shall produce such relevant, non-privileged ESI in the format

4  specified in Exhibit A. The load file shall indicate document breaks, and,

5  where readily available, the metadata created when the hard-copy

6  documents were converted to ESI. Nothing in this paragraph shall be

7  deemed to require FDIC-R to produce again any hard-copy documents it

8  produced prior to execution of this Protocol, regardless whether its prior

9  production(s) conformed to the requirements of this Protocol.

10       28.    Documents withheld by FDIC-R on the basis of privilege,

11  work product, or similar exemption shall be logged, and the log shall be

12  provided to Progressive and the Ds & Os together with FDIC-R's ESI

13  production or within 30 days after its production of the ESI material the

14  privileged documents relate to.

**Ds' & Os' ESI**

16       29.    If the Ds & Os are in possession of any ESI that is

17  responsive to document requests issued to them by Progressive or FDIC-R,

18  including, without limitation, email and documents of various types,

19  subject to this Protocol and the Confidentiality Agreement and Stipulated

20  Protective Order in this matter (Docket. No. 63), and pursuant to an Order

21  of this Court which shall be deemed made by approval of this Protocol, the

22  Ds & Os shall produce to FDIC-R and Progressive any such non-privileged

23  ESI. With respect to any such ESI that the Ds & Os contend is protected

24  from disclosure by the attorney-client privilege, the work-product doctrine,

25  or any other applicable privileges or protections, the Ds & Os shall produce

26  to Progressive and FDIC-R a log identifying any such documents together

27  with their production of ESI or within 30 days after the production of the

28  ESI material the privileged documents relate to.

HOWARD & HOWARD

By  /s/ Matthew J. Dendinger
    Lewis K. Loss
    Richard W. Boone, Jr.
    Matthew J. Dendinger
    Loss, Judge & Ward, LLP
    Two Lafayette Centre
    1133 21st Street, NW
    Washington, DC 20036

Thomas W. Davis, II
Howard & Howard
Wells Fargo Tower, Suite 1400
3800 Howard Hughes Parkway
Las Vegas, NV 89169

*Counsel for Plaintiff Progressive Casualty Insurance Company*

ARMSTRONG & TEASDALE

By:  /s/ Kevin R. Stolworthy
    Kevin R Stolworthy, No. 2798
    Conor P. Flynn, No. 11569
    Armstrong Teasdale
    3770 Howard Hughes Parkway
    Suite 200
    Las Vegas, NV 89169

*Counsel for Jackie K. Delaney, Larry E. Carter, Mark A. Stout, Kenneth Templeton, John Shively, Steven C. Kalb, Jerome F. Snyder, Hugh Templeton, and Rick Dreschler*

MORRIS LAW GROUP

By /s/ Andrew M. Reidy
    Robert McCoy, No. 9121
    Joni A. Jamison, No. 11614
    900 Bank of America Plaza
    300 South Fourth Street
    Las Vegas, Nevada 89101

LEE, HONG, DEGERMAN, KANG, WAIMEY
Eric D. Olson (*pro hac vice*)
1920 Main Street, Suite 900
Irvine, CA 92614

DICKSTEIN SHAPIRO LLP
Andrew M. Reidy (*pro hac vice*)
Catherine J. Serafin (*pro hac vice*)
Joseph M. Saka (*pro hac vice*)
1825 Eye Street NW
Washington, DC 20006

*Attorneys for Federal Deposit Insurance Corporation as Receiver of Sun West Bank*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

**ORDER**

IT IS SO ORDERED that each of the parties and their respective counsel shall be governed by the terms and conditions of the above agreement concerning the production of ESI documents.

_____

UNITED STATES MAGISTRATE JUDGE

DATED: _____October 24, 2013_____

# EXHIBIT A

# EXHIBIT A

## EXHIBIT A TO ESI PROTOCOL
## Form of Production for Email

All electronic email from Windows-Based ESI ("WESI") shall be produced as Static Images.[1] Static Images shall be produced by FDIC-R complete with full text extracts and the following fields of Metadata, to the extent the Metadata is available:

1.   Custodian (Natural person or device in possession of the record at the time of collection)

2.   Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)

3.   From (Name)

4.   Author Meta (Last editor of attachment/e-doc)

5.   CC

6.   BCC

7.   Sent To

8.   MD5 Hash Value or Equivalent

9.   Sent Date (Date e-mail was sent from sender)

10.  Sent Time (Time e-mail was sent from sender)

11.  COMPPATH (Complete Filename and path)

---

[1] "Static Image(s)" means a representation of ESI produced by converting a Native File, including but not limited to the files identified in Exhibit A, into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the Parties or order of Court, a Static Image, when provided, should be provided in 300 dpi resolution, single-page black and white CCITT Group IV Tagged Image File Format (TIFF or .TIF files). If a TIFF or .TIF file cannot be created, then the Static Image should be provided in Portable Document Format (PDF).

12.     Document Type (Field in Relativity describing the family relationship (parent or attachment) of a record

13.     Application (Program commonly used to access the record)

14.     Extracted Text (Text of e-mails, nested e-mail body, or raw text from images, edocs, or attachments)

15.     Bates Begin

16.     Bates End

17.     Bates Attach Begin

18.     Bates Attach End

19.     Relativity ID (Unique Relativity identifier – Document Control Number)

20.     Subject (e-mail subject line)

21.     Group Identifier (Full range of Relativity records between beginning parent document and ending child document)

22.     Title Meta (Title of attachment/standalone edoc metadata)

23.     Last Modified Date (Full date edoc was modified before saving/sending)

Static Images shall be produced by Progressive complete with full text extracts and the following fields of Metadata, to the extent the Metadata is available:

1.      Custodian (Name of Custodian from which file is being produced);

2.      Other Custodians (Name(s) of custodian(s) who had exact copy of message before de-duplication);

3.      Author (FROM field);

4. CC;

5. BCC;

6. Recipient (TO field);

7. MD5 Hash Value or Equivalent;

8. Time Sent (Time the email was sent);

9. Time Received (Time the email was received);

10. File Type (Application used to create the file);

11. Page Count;

12. PST Name;

13. Body Text (Extracted text);

14. Bates Begin (Beginning Production Number);

15. Bates End (Ending Production Number);

16. Attach Begin (Beginning Attachment Range Number);

17. Attach End (Ending Attachment Range Number);

18. Control Number or DocID Number;

19. Subject (subject line of the e-mail).

With respect to productions by both FDIC-R and Progressive, electronic mail shall be produced along with attachments to the extent the message and/or any attachment is responsive, relevant and not privileged. As a general matter, subject to specific review, a message and its attachments(s) shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant, or non-responsive. To the extent the message and/or one or more attachments is privileged or non-responsive, the responsive, non-privileged documents shall be produced along with placeholders indicating whether the accompanying record was withheld as non-responsive or privileged. All Parties should

confirm that their ESI is Windows-based or, if not, identify the other forms of ESI within their possession, custody and control.

### Form of Production for Other WESI

All other WESI (including attachments to electronic mail) shall be produced as Static Images. Static Images shall be produced by FDIC-R complete with full text extracts and the following fields of Metadata, to the extent the Metadata is available:

1. Custodian (Natural person or device in possession of the record at the time of collection)

2. Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)

3. Author Meta (Last editor of attachment/e-doc)

4. Title Meta (Title of attachment/standalone edoc metadata)

5. Created Date (Contains the date the edoc was created)

6. Created Time (Contains the time the edoc was created)

7. Last Modified Date (Full date the edoc was modified before saving/sending)

8. Application (Program commonly used to access the record)

9. Document Type (Field in Relativity describing the family relationship (parent or attachment) of a record

10. Group Identifier (Full range of Relativity records between beginning parent document and ending child document)

11. COMPPATH (Complete Filename and path)

12. MD5 Hash

13.     Extracted Text (Text of e-mails, nested e-mail body, or raw text from images, edocs, or attachments)

14.     Bates Begin

15.     Bates End

16.     Bates Attach Begin

17.     Bates Attach End

18.     Relativity ID (Unique Relativity identifier – Document Control Number)

Static Images shall be produced by Progressive complete with full text extracts and the following fields of Metadata, to the extent the Metadata is available:

1.     Custodian (Name of Custodian from which file is being produced);

2.     Other Custodians (Name(s) of custodian(s) who had exact copy of message before de-duplication);

3.     Author;

4.     Doc Title (Title of file from properties);

5.     Doc Subject (Subject of file from properties);

6.     Created Date (Date the file was created);

7.     Created Time (Time the file was created);

8.     Last Modified Date and Time (Date and Time the file was last modified);

9.     Last Saved By (Name of user who last saved the file);

10.     File Type (Application used to create the file);

11.     Doc Type;

12.     Page Count;

13. Path (Full path of the original location where the file was located);

14. MD5 Hash (MD5 hash value of the original native file);

15. Body Text (OCR for paper data or Extracted text for all ESI);

16. Bates Begin (Beginning Production Number);

17. Bates End (Ending Production Number);

18. Attach Begin (Beginning Attachment Range Number);

19. Attach End (Ending Attachment Range Number);

20. Control Number or DocID Number.

### Native Production

The Parties shall have the right to request that ESI be produced as Native Files in addition to the format set forth above when a party has a reasonable belief that a Native File contains additional information not otherwise viewable from the production format set forth above and such additional information is relevant and reasonably calculated to lead to the discovery of admissible evidence. These documents will be accompanied with the appropriate load files indicating a cross reference to the Bates numbered Static Image.

Additionally, in the event a Party wishes to produce WESI e-mail and non-email in native form rather than as Static Images, the Parties shall meet and confer to discuss the feasibility of, and guidelines for, any such production.

Each WESI document produced as a Native File will have a unique document identification number (i.e., "Relativity ID") generated and included within the production as a separate metadata field within the

DAT or DII load file. The Relativity ID shall be the default unique document identification number.

### Form of Production for Spreadsheets

ESI in the form of spreadsheets shall be produced as Native Files along with a placeholder Static Image listing the spreadsheet document that is being produced. These documents will be accompanied by the appropriate load files indicating a cross reference to the Bates numbered Static Image.

### Microsoft Access Databases

With respect to non-privileged Microsoft Access Database files, each Party shall provide a list of all such files, along with a description of each database sufficient to allow the other Parties to determine whether they wish the database(s) to be produced. In the event that they do, the Parties shall meet and confer to discuss the production of such database(s).

### Load Files[2]

All WESI shall be produced along with an IPRO, Opticon, or Summation DII load file indicating Bates numbers and document breaks as applicable. Metadata shall be produced in Concordance DAT file format, DII format, and summary text file for Summation, or XML format, and extracted full text shall be provided in TXT file format at the document level. Non-Windows-Based Applications and Data shall be subject to the same production requirements to the extent technically and legally feasible.

---

[2] A litigation support "load file," as that term is used herein, refers to the file necessary to reference images of documents and corresponding load file data into a reviewable database. A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document.

### Duplicates

To avoid the production of more than one copy of a particular unique item, the Parties shall use industry standard MD5 (or SHA-1) hash values within (1) all emails identified for production, and (2) all loose electronic files identified for production. The Parties will not de-duplicate attachments to emails against loose electronic files. The Parties shall also produce a field listing all custodians of any de-duplicated copies of an email or other electronic document.

### Other Methods to Streamline Discovery

The Parties agree to meet and confer in good faith about any other technology or process that a producing party proposes to use to streamline the culling, review and production of ESI (e.g., email threading, near de-duplication, technology assisted review). The Parties shall make reasonable good faith efforts to resolve any objections to the use of such technology or process before seeking relief from the Court.

### Production Media

Documents shall be produced on external hard drives or readily accessible computer or electronic media, e.g., CDs, DVDs, or flash or thumb drives ("Production Media"). All Production Media should have the following five directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; (4) NATIVES for any native Excel files or Exception Documents; and (5) Load Files. The Production Media shall identify: (a) the producing Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

**Color**

Where the original of a produced document is in color, and color is material to the interpretation of the document, the receiving party may request that the document be produced in color (whether electronic or paper). Otherwise, production will be in 300 dpi resolution, single-page black and white CCITT Group IV Tagged Image File Format.

# EXHIBIT B

# EXHIBIT B

# EXHIBIT B TO ESI PROTOCOL

## Sun West Bank ESI Databases

S5 Director All Reports

S5 Director Deposit Reports

S5 Director Loan Reports

S5 Fileshares

S5 Forensic Data

S5 Forensic Data Email

S5 Laserpro Customer Information

S5 Laserpro Loan Origination Information

S5 OMS Deposit Info

S5 OMS GL Info

S5 OMS Loan Info

S5 Scanned Documents