MORRIS LAW GROUP
Robert McCoy, No. 9121
Email:  rrm@morrislawgroup.com
Joni A. Jamison, No. 11614
Email:  jaj@morrislawgroup.com
900 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada  89101
Telephone:  (702) 474-9400

LEE, HONG, DEGERMAN, KANG & WAIMEY
Eric D. Olson (*pro hac vice*)
Email:  eolson@lhlaw.com
3501 Jamboree Road, Suite 6000
Newport Beach, California 92660
Telephone:  (949) 419-8713

DICKSTEIN SHAPIRO LLP
Andrew M. Reidy (*pro hac vice*)
Email:  reidya@dicksteinshapiro.com
Catherine J. Serafin (*pro hac vice*)
Email:  serafinc@dicksteinshapiro.com
Joseph M. Saka (*pro hac vice*)
Email:  sakaj@dicksteinshapiro.com
1825 Eye Street NW
Washington, DC  20006
Telephone:  (202) 420-2200

Attorneys for Intervenor Federal Deposit
Insurance Company as Receiver for
Sun West Bank

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>     v.<br><br>JACKIE K. DELANEY; LARRY E. CARTER; MARK A. STOUT; KENNETH TEMPLETON; JOHN | Case No. 2:11-cv-00678-LRH-PAL<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SUN WEST BANK'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES FROM PROGRESSIVE CASUALTY INSURANCE COMPANY** |

SHIVELY; STEPHEN C. KALB;      )
JEROME F. SNYDER; HUGH         )
TEMPLETON; and RICK            )
DRESCHLER,                     )
                               )
            Defendants.        )
                               )
_____)

## I.    INTRODUCTION

Four and a half months after FDIC-R served its discovery requests, Progressive has not produced a single document in this case even though fact discovery closes on March 14, 2014.[1]  In its opposition to the motion to compel, Progressive finally agrees to produce some of the documents FDIC-R seeks, but does not provide any date for its promised production.  Progressive also fails to explain why it put FDIC-R to the time and expense of motion practice for these documents.  Unfortunately, Progressive still steadfastly refuses to produce many other documents.

Rather than focusing on the merits of the discovery requests, Progressive's arguments focus in large part on its repeated assertion that the FDIC acting as receiver has refused to coordinate discovery in the nine lawsuits that Progressive filed.  The nine lawsuits Progressive filed involve insurance coverage for claims against directors and officers of nine failed

_____

[1]  A large portion of Progressive's opposition is devoted to agreeing to produce documents Progressive previously stated it would withhold. Progressive's conduct is purposefully dilatory.  For example, on September 17, 2013, Progressive and FDIC-R met-and-conferred to try to resolve the discovery disputes reflected in this motion.  That same day FDIC-R sent a letter trying to confirm Progressive's position and narrow any disputes. When Progressive did not respond for more than two weeks, FDIC-R again emailed seeking a response.  Progressive began its email curtly responding: "We understand that your emails below reflect your recollection of our September 17, 2013 teleconference."  Ex. 1, Oct. 25, 2013 Decl. of Joseph Saka, ("Oct. 25 Decl."), Ex. E.  Progressive's failure to engage in a dialogue about the documents sought left FDIC-R to seek relief from the Court.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

banks.  The cases involve nine separate Progressive policies, different insureds (Progressive named 68 individuals in the declaratory judgment complaints), different applicable law, and different policy provisions.  The cases involve different factual assertions that have to be addressed separately.  Each involves a separate receivership.  The cases have different schedules and deadlines and are pending before nine different federal judges.  Thus, the need to serve separate discovery in each of the actions is necessitated by the fact that Progressive filed nine separate actions.

Ultimately, the issue for the Court is whether Progressive should be compelled to produce (1) documents from its claims file for the very claim at issue, (2) communications with its reinsurers relating to coverage for similar claims by the FDIC acting as receiver, (3) prior testimony of its underwriting, claims, and marketing witnesses (including witnesses on its initial disclosures), (4) communications relating to the insurance policy provisions at issue, (5) claims manuals, and (6) documents relating to the organization of its claims and underwriting departments.  As set forth more fully below, each request seeks information that is reasonably calculated to lead to the discovery of admissible evidence.  Therefore, FDIC-R seeks an order from the Court compelling Progressive to produce within ten days the responsive documents at issue.

## II.    FACTUAL BACKGROUND

Because Progressive spends such a substantial amount of its brief complaining about the scope of discovery in the eight other actions it filed, FDIC-R briefly explains the discovery to date in this case and the general state of discovery in the other cases filed by Progressive.

In this case, FDIC-R has served a first set of requests for production, a first set of interrogatories, and a first set of requests for

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

admission.  Ex. 1, Oct. 25 Decl. ¶ 4.  To date, Progressive has yet to produce a single document in this case.[2]  Ex. 2, Dec. 3, 2013 Decl. of Joseph Saka, ("Saka Decl.") at ¶ 4.  Given the rate at which FDIC-R has received information from Progressive and the impending discovery deadline in this case, FDIC-R also has pursued discovery from third parties.

Notwithstanding the limited discovery sought by FDIC-R in this lawsuit, Progressive bemoans the discovery sought by the FDIC in other matters.  Progressive filed nine declaratory judgment actions in seven different jurisdictions against the insured former directors and officers of nine different failed banks across the country and the FDIC as receiver for the nine failed banks.[3]  There are 68 individual insured directors and officers that are defendants in these nine lawsuits and whose insurance coverage is being litigated.  Each declaratory judgment action involves different underlying Claims, and most involve different applicable law.[4]  The FDIC has separate counsel in the majority of the cases.  Each case has a

---

[2]  Pursuant to the parties' Electronically Stored Information ("ESI") Protocol, FDIC-R also sent Progressive search terms to use to search its ESI.  Despite repeated requests on November 12 and November 27, Progressive has yet to advise FDIC-R of the hits generated by these search terms.

[3]  The other actions are:  *Progressive Cas. Ins. Co. v. FDIC as Receiver for Cmty. Bank of Ariz.*, No. 2:13-cv-232-BSB (D. Ariz.); *Progressive Cas. Ins. Co. v. Dalton, et al.*, No. 2:12-cv-00713-MCE-CKD (E.D. Cal.) (involving FDIC as Receiver for Pacific State Bank); *Progressive Cas. Ins. Co. v. FDIC as Receiver for Omni Nat'l Bank*, No. 1:12-cv-01103-RLV (N.D. Ga.); *Progressive Cas. Ins. Co. v. FDIC as Receiver for Vantus Bank*, No. 5:12-cv-04041-DEO (N.D. Iowa); *Progressive Cas. Ins. Co. v. FDIC as Receiver for Mich. Bank Heritage*, No. 2:11-cv-14816-SFC-MAR (E.D. Mich.); *Progressive Cas. Ins. Co. v. FDIC as Receiver for Silver State Bank*, No. 2:12-cv-00665-RLH-PAL (D. Nev.); *Progressive Cas. Ins. Co. v. FDIC as Receiver for Orion Bank*, No. 2:13-cv-737-SPC-UAM (M.D. Fla.); and *Progressive Cas. Ins. Co. v. FDIC as Receiver for Riverside Nat'l Bank of Fla.*, No. 1:13-cv-23758-UU (S.D. Fla.).

[4]  Two of the cases will involve the application of Nevada law, and two of the cases will involve the application of Florida law.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

separate discovery schedule and case deadlines.  Each action is assigned to a different federal judge.  In two of the cases, the FDIC acting as receiver of the failed bank is not due to file its answer until January 2014.  *FDIC as Receiver for Orion Bank*, No. 2:13-cv-737-SPC-UAM; *FDIC as Receiver for Riverside Nat'l Bank of Fla.*, No. 1:13-cv-23758-UU.  One of the cases was stayed in favor of a bankruptcy proceeding.  *FDIC as Receiver for Cmty. Bank of Ariz.*, No. 2:13-cv-232-BSB.  Therefore, the need to issue separate discovery in each action is dictated by the fact that they are nine separate, distinct cases initiated by Progressive.[5]

Progressive has systematically delayed document production in all of these cases.[6]  Even though Progressive filed two cases in 2011 and four in 2012, Progressive has not produced all of its paper documents nor made its ESI production in any case.  To date, Progressive has produced only 1,759 pages, including 869 blank pages, from its ESI production despite its repeated representation that it has had eight attorneys working full-time to review documents for months.  Ex. 2, Saka Decl. at ¶ 4.

Despite Progressive's repeated complaints about the scope of discovery in the cases, Progressive has actively thwarted the FDIC from

---

[5]  Nevertheless, the FDIC has attempted to coordinate the cases when it is mutually beneficial.  For instance, at the FDIC's suggestion, the parties have agreed to confidentiality agreements in each case that permit for sharing of confidential documents among the cases.  *See, e.g.,* #62 at ¶ 4.b.

[6]  In addition to this lawsuit, Progressive sought summary judgment in three other declaratory judgment actions before any discovery occurred.  In each action, the court denied summary judgment.  *See Progressive Cas. Ins. Co. v. FDIC as Receiver for Silver State Bank*, No. 2:12-cv-00665-KJD-PAL, 2012 WL 5418298, at *2 (D. Nev. Nov. 2, 2012); *Progressive Cas. Ins. Co. v. FDIC as Receiver for Mich. Heritage Bank*, 2012 WL 8437693, at *3 (E.D. Mich. Sept. 24, 2012); *Progressive Cas. Ins. Co. v. FDIC as Receiver for Omni Nat'l Bank,* 926 F. Supp. 2d 1337 (N.D. Ga. 2013).  All courts ordered the parties to engage in discovery.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

taking depositions.  For instance, for months, and on no fewer than seven occasions, FDIC-R (and FDIC as Receiver for Vantus Bank) sought a mutually convenient date to take the deposition of Patricia Williams, a Senior Account Executive at Progressive's claims agent ABA Insurance Services ("ABAIS").  *Id.* at ¶ 5.  After Progressive refused to provide a date, FDIC-R unilaterally noticed the deposition for September 20.  *Id.*, Ex. A.  Only then did Progressive's counsel advise that Ms. Williams was available for a deposition on September 25, and FDIC-R therefore re-noticed the deposition for that date.  *Id.*, Exs. B-D.  But just one day before the deposition was to take place, Progressive filed a motion for protective order in the District of Columbia seeking to either: (1) block Ms. Williams' deposition by tying the date of the deposition to the time Progressive produces its documents; or (2) obtain an advance order precluding any future deposition of Ms. Williams.  *See Progressive Cas. Ins. Co. v. FDIC as Receiver for Sun West Bank*, No. 1:13-mc-1043 (D.D.C.).[7]

In sum, Progressive is improperly attempting to treat nine separate actions as one and has used delay tactics to frustrate discovery.

---

[7]  Progressive points to the requested 30(b)(6) deposition of Progressive as evidence that the FDIC has not coordinated discovery.  Just the opposite is true.  Dating back to at least June 2013, the FDIC as Receiver for Silver State Bank repeatedly requested information regarding Progressive's retention of, and search for, ESI.  Ex. 2, Saka Decl., Exs. H-J.  When Progressive finally responded on October 18 leaving many questions unanswered, counsel for the FDIC as Receiver for Silver State Bank requested dates to take the 30(b)(6) deposition of Progressive.  *Id.*, Exs. K-P.  Progressive failed to respond with deposition dates for weeks.  *Id.*, Ex. O.  Because the FDIC as Receiver for Omni National Bank had many of the same questions, both receiverships coordinated a date and unilaterally noticed the deposition for December 4, 2013.  *Id.*, Ex. Q.  When it was discovered that the depositions had been noticed for different locations, the FDIC's counsel promptly offered to hold the deposition at a location of Progressive's choosing.  *Id*.  The deposition is expected to proceed for both cases on December 4.

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

## III.   ARGUMENT

### A.   FDIC-R Is Entitled to Documents from Progressive's Claims File, and Progressive's Proposed Production Is Insufficient.

After forcing FDIC-R to go through the time and expense of filing a motion to compel, Progressive now states that it will "produce that portion of its claims file created prior to December 14, 2010, the date on which Progressive's outside counsel conveyed Progressive's coverage determination concerning the [FDIC-R's] claim to the Ds & Os." Progressive, recognizing of Nevada authority, concedes that "'information the insurer had in reaching its decision to deny benefits, and its rationale for denying benefits is relevant and discoverable' with respect to the insured's breach of contract claim."  Pl's Opp'n (#76) at 6 (citing *Henderson v. Property & Cas. Ins. Co. of Hartford*, No. 2:12-cv-00149-KJD-PAL, 2012 WL 3730533 (D. Nev. Aug. 28, 2012)).[8]  This concession is significant, but unfortunately, Progressive's "planned" production does not go far enough.

Progressive for the first time indicates that it intends to provide a privilege log with respect to any documents withheld as privileged from its claims file created prior to December 14, 2010.  To date, Progressive has not provided a log of any documents being withheld as privileged. Progressive previously represented that it would not be providing a privilege log with respect to documents from its claims file.  Ex. 1, Oct. 25 Decl., Ex. C.  Although Progressive's planned production of certain documents from its claims file is welcome, its promise that it will now provide a privilege log—nearly six months after FDIC-R served its discovery requests and after forcing FDIC-R to file a motion—is untimely and justifies a finding that Progressive has waived any privilege.  *See* Fed.

---

[8]  Progressive has abandoned its objection that the request is vague and ambiguous.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

R. Civ. P. 26(b)(5)(A)(ii); *Everest Indem. Ins. Co. v. Aventine-Tramonti Homeowners Ass'n*, No. 2:09-cv-1672-RCJ-RJJ, 2011 WL 3841083, at *4-5 (D. Nev. Aug. 29, 2011) (waiver of privilege by failing to provide privilege log). The Court should set a date for the production of the claims file documents and rule that any assertion of privilege has been waived.

Progressive also states that it will continue to withhold documents from its claims file after it reached its coverage determination and communicated it to the Ds & Os on December 14, 2010.  Progressive asserts that "the entirety of Progressive's post-coverage determination claim file is work product and protected from disclosure."  Pl's Opp'n (#76) at 7.  But Progressive does not offer any case law or supporting evidence from its personnel to support this position.  *Compare, e.g., Schmidt v. Cal. State Auto. Ass'n*, 127 F.R.D. 182, 184 (D. Nev. 1989) ("[t]he boundary between claims adjusting materials prepared in the ordinary course of processing claims and work-product prepared in anticipation of litigation evades precise demarcation").  Regardless of when Progressive made its coverage determination, to be protected as work product, the document actually must have been created in anticipation of litigation.  *See id.*  If Progressive is claiming every document in Progressive's claims file after it made its coverage determination was created in anticipation of litigation, it had the burden of creating a log for those documents and its refusal to do so constitutes a waiver of any privilege.[9]

Although acknowledging that the rationale for its coverage determination is relevant to this lawsuit, Progressive inconsistently asserts that its post-coverage determination documents are irrelevant.  Progressive

---

[9]  Progressive cites cases for the proposition that privilege logs serve no useful purpose after litigation commences.  FDIC-R does not seek documents in the claims file after the litigation commenced.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

contends that the "post-coverage determination portion of Progressive's claim file does not reflect 'information [Progressive] had in reaching its [coverage] determination' or its 'rationale for' its coverage determination." Pl's Opp'n (#76) at 8.  Again, without any supporting affidavit or declaration, Progressive contends that "this portion of the claim file contains and reflects information pertinent to Progressive's defense of its coverage determination in anticipated coverage litigation." *Id.*  Documents that refine Progressive's coverage position that were created after December 14, 2010 or that contain additional factual information are relevant and not protected by any privilege.  Moreover, these documents are relevant to FDIC-R's affirmative defenses of unclean hands, bad faith, and estoppel which are based in part upon the argument that Progressive's current interpretation of its Policy is at odds with its prior positions.

FDIC-R therefore seeks an order that Progressive must produce its entire claims file (both pre- and post-December 14, 2010 documents) until this litigation commenced.  FDIC-R further seeks an order finding that Progressive has waived any purported privilege over the documents in its claims file that were created prior to the litigation.

### B.   FDIC-R Is Entitled to Progressive's Communications with Its Reinsurers.

After forcing FDIC-R to move to compel Progressive's communications with its reinsurers, Progressive now also commits to producing "non-privileged 'communications between Progressive and its reinsurer(s) on the . . . claims involved in the underlying [FDIC claim], in addition to the 'general' reinsurance communication information Progressive has agreed to provide." Pl's Opp'n (#76) at 9.  Progressive makes this promise based on this Court's recent order in *Progressive Casualty Insurance Co. v. FDIC as Receiver for Silver State Bank*, Case No. 2:12-

cv-00665-KJD-PAL, 2013 WL 5947783 (D. Nev. Nov. 1, 2013).[10]  Once again, however, Progressive's intended production is insufficient.

FDIC-R's requests relating to reinsurance communications was not limited to communications relating to the claim at issue.  Rather, FDIC-R also sought, *inter alia*, "all documents relating to any Communications with any reinsurer about coverage under Professional Liability Insurance Policies for claims by the FDIC as receiver for failed banks against directors and officers of failed banks."  Request No. 27.  Progressive continues to refuse to produce such communications.

In *FDIC as Receiver for Silver State Bank*, this Court stated seven reasons why reinsurance communications **are relevant**:

> The court finds that communications with the reinsurer(s) are relevant and discoverable within the meaning of Rule 26(b)(1) for various reasons: (1) to determine how Progressive has interpreted the policy provisions in dispute in this lawsuit in communications with its reinsurer(s); (2) whether Progressive's interpretations of the policy provisions in dispute in this action have been consistent or inconsistent with positions taken vis-a-vis its policy holders; (3) whether Progressive and its reinsurer(s) have discussed or reached understandings with respect to whether management activity claims under the D&O policies would be covered; (4) whether Progressive and its reinsurer(s) discussed the insureds' expectations on the scope of coverage; (5) when Progressive received notice of certain of the officers, directors, and employees' claims which Progressive maintains were not timely provided; (6) if the policy holders' claims were untimely, whether Progressive claimed it was prejudiced by the failure to provide timely notice of the potential claim; (7) whether, and to what extent, the reinsurer(s) were involved in sales and marketing of the D&O policies

---

[10]  The Court issued this opinion on November 1, 2013, one week after FDIC-R filed its Motion.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

in dispute in this case, and if so, what the sales and marketing efforts reflect in terms of the reasonable expectations of the insureds concerning the scope of coverage.

*FDIC as Receiver for Silver State Bank*, 2013 WL 5947783, at *10.  The court's rationale is not limited to Progressive's communications relating to the specific claim at issue and supports the discovery of reinsurance communications relating to coverage for other claims by the FDIC acting as receiver.

The professional liability insurance policy form Progressive sold to its policyholders is generally identical.  All include the insured v. insured exclusion and all include the unpaid loan carve out.  Progressive has proffered no reason why its coverage analysis should vary from one policyholder to the next.  In fact, evidence obtained from third parties indicates that in submitting reports to its reinsurers, Progressive grouped and analyzed claims by the FDIC against failed banks' directors and officers.  Ex. 2, Saka Decl., Exs. E-F.  For instance, the president of one of Progressive's reinsurers testified that Progressive had reported 27 claims involving the FDIC acting as receiver against failed banks' directors and officers.  *Id.*, Ex. E.  Additionally, Progressive's reinsurer, American Bankers Mutual Insurance ("ABMI"), recently provided a privilege log showing that Progressive, in its communications with its reinsurers, grouped "Claims Involving FDIC Demands Against Ds & Os."  *Id.*, Ex. F.  None of this information was available to the parties or to the Court when the Court issued its discovery ruling in *FDIC as Receiver for Silver State Bank.*

Progressive therefore should be compelled to produce within ten days its communications with its reinsurers relating to the following: (1) FDIC-R's claims against the Ds & Os; (2) the policy at issue; (3) the policy provisions at issue; and (4) coverage under Professional Liability

Insurance Policies for claims by the FDIC as receiver for failed banks against directors and officers of failed banks.[11]

### C.   Progressive Should Produce Prior Testimony of Key Witnesses.

In its opening brief, FDIC-R moved to compel Progressive to produce testimony of several witnesses who played an active role in developing the policy language at issue, marketing the policy, and/or handling claims under the policy, including witnesses who are identified by Progressive in its initial disclosures.  Progressive does not take issue with the proposition that each of these witnesses are involved in the drafting or marketing of the policy form or involved with handling claims under the policy form.  FDIC-R pointed out that the requested documents may contain relevant information reflecting testimony relating to, among other things, (1) the scope of coverage under Progressive's professional liability insurance policy form, (2) the policy provisions at issue, (3) background information of the witnesses, or (4) information that will allow the fact finder to assess credibility.  FDIC-R also noted that the requested previous testimony also may narrow the scope of depositions in this case and be used in examining or cross-examining Progressive's witnesses.

In its one-paragraph opposition, Progressive does not explain why the requested information is not discoverable.  Instead, Progressive accuses FDIC-R of "offering nothing more than vague and unsupported factual assertions . . . regarding information that the requested transcripts

---

[11]  Progressive appears to have abandoned any argument that the requests are unduly burdensome.  Given that there purportedly are only 27 claims involving the FDIC acting as receiver that have been reported by Progressive to its reinsurers (Ex. 2, Saka Decl., Ex. E), any burden arguments would undoubtedly fall flat.

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

'*may contain*.'" Pl's Opp'n (#76) at 10 (emphasis in original).[12]  Of course, FDIC-R does not and cannot know the precise contents of the requested testimony.  Only Progressive has that information.

Nevertheless, testimony of some of the witnesses already has proved significant.  For instance, in *FDIC as Receiver for Silver State Bank*, No. 2:12-cv-665-RLH-PAL (D. Nev.), Progressive submitted numerous declarations of Terrence Cawley in support of Progressive's assertion that it would be unduly burdensome to identify other claims that are relevant to the litigation.  FDIC as Receiver for Silver State Bank obtained Mr. Cawley's testimony from another matter and learned that there are numerous ways in which Progressive can identify responsive claims.  *FDIC as Receiver for Silver State Bank*, 2:12-CV-00665-KJD, 2013 WL 5947783, at *5 (D. Nev. Nov. 1, 2013).  Indeed, the court cited this information in ordering Progressive to produce documents relating to similar claims.  *Id.* ("Based on information Mr. Cawley provided in his deposition testimony, the FDIC–R learned that, contrary to Progressive's earlier claims, there are numerous ways for Progressive to identify responsive claims").

The Court therefore should order Progressive to produce all sworn testimony and statements of the witnesses listed in the request within ten days.

---

[12]  Progressive also cites to an inapposite opinion from the District Court for the Northern District of Texas, where the court without any explanation denied a request for "[a] copy of all prior depositions that the deponent has given in the last ten years," because the only issue was "whether the subject policy is governed by ERISA."  *Thompson v. Unum Life Ins. Co. of Am.*, CIV.A. 303CV0277D, 2003 WL 22171706 (N.D. Tex. Sept. 17, 2003).  This case is contrary to the great weight of authority.  *See, e.g., Bennett v. Segway, Inc.*, 1:11CV09, 2011 WL 4965179, at *3 (W.D.N.C. Oct. 19, 2011); *Burks v. Abbott Labs.*, No. 08-3414, 2011 WL 5176903 (D. Minn. Oct. 31, 2011); *Lillibridge v. Nautilus Ins. Co.*, No. 10-4105, 2013 WL 1896825 (D.S.D. May 3, 2013).

MORRIS LAW GROUP · 900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101
702/474-9400 · FAX 702/474-9422

### D.   FDIC-R Is Entitled to Agreements Among Progressive, ABMI, and/or ABAIS.

In its opening brief, FDIC-R asked the Court to compel Progressive to produce agreements among, or documents reflecting the relationship among or between, ABMI, ABAIS, and/or Progressive relating to the Policy, Sun West, or the *Delaney* Action.  As noted in FDIC-R's opening brief, Progressive responded by referring FDIC-R to eleven agreements that were produced to other attorneys in another matter.  Progressive, however, refused to check, or advise FDIC-R, whether there are any other responsive documents.  FDIC-R therefore sought to compel the production of all documents responsive to its requests.

Rather than including the requested information in its opposition, Progressive, tacitly conceding that the request seeks relevant information, again points FDIC-R and the Court to the eleven agreements it produced to other counsel in another lawsuit.  Progressive glaringly does not disclose whether there are any other documents responsive to its request.  Troublingly, based on documents produced by a third party, it appears that Progressive has not disclosed all responsive documents and has withheld some agreements that are responsive to FDIC-R's request. *See, e.g.,* Ex. 2, Saka Decl., Exs. R-S.

Therefore, the Court should compel Progressive to produce <u>all</u> documents responsive to Document Request Nos. 55, 56, 58, and 59.[13]

---

[13]  Progressive and ABAIS have an independent obligation to produce documents responsive to FDIC-R's requests regardless of whether Progressive or ABAIS produced the same documents in response to requests in other lawsuits involving the FDIC.  Nevertheless, to create an easy way to share the information, FDIC-R requested that Progressive provide (a) the request to which the documents are responsive; (b) the date the documents were sent; (c) the location to which the documents were sent; (d) the recipient of the documents; and (e) the bates range of the

E.     **Progressive Improperly Seeks to Limit Its Production of Documents Relating ro Its Interpretation of the Insured v. Insured Exclusion and Unpaid Loan Carve Out from the Definition of "Loss" Involving Progressive's Other Policyholders.**

In its opening brief, FDIC-R requested that the Court compel Progressive to produce "all documents relating to the meaning, construction, interpretation or application of the term 'Loss' as used in the Policy," and "all documents relating to the meaning, construction, interpretation or application of the language used in the Insured v. Insured exclusion in the Policy" regardless of whether those communications involved Progressive's other policyholders.[14]  In response to these requests, FDIC-R seeks only for Progressive to produce responsive documents located by Progressive in the course of producing its ESI.[15]  FDIC-R's request is narrowly tailored to the results of ESI hits and will not require any significant additional effort by Progressive.

Notably, the requested production is something that Progressive repeatedly offered to do.  *See, e.g.,* Ex. 1, Oct. 25 Decl., Ex. E; Ex. 2, Saka Decl., Exs. G-I.  For instance, in one proposal, Progressive proposed the following with respect to its communications with other insureds:

---

documents.  Progressive apparently refuses to do so, and FDIC-R thus seeks an order compelling Progressive to do so.

[14]  As set forth in FDIC-R's opening brief, such discovery is routinely granted.  *Phillips v. Clark Cnty. Sch. Dist.*, No. 2:10-cv-02068, 2012WL 135705, at *4-6 (D. Nev. Jan. 18, 2012); *Polygon Nw. Co., LLC v. Steadfast Ins. Co.*, No. C08-1294RSL, 2009 WL 1437565, at *2 (W.D. Wash. May 22, 2009); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-cv-2192, 2008 WL 2324616, at *2-3 (D. Kan. June 4, 2008).

[15]  FDIC-R will be able to gain access to those documents that the Court ordered Progressive to produce in *FDIC as Receiver for Silver State Bank* pursuant to the sharing agreement in place between the cases.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

> Progressive will not withhold from production documents that are otherwise responsive to FDIC-R's requests for production and non-privileged solely on the basis that they pertain to or reference Progressive's Other Insureds. Progressive may redact identifying information from any such documents produced pertaining to such Other Insureds but, if it does so, will identify the documents in such a way as to allow FDIC-R to determine which documents pertain to a particular insured.

Ex. 2, Saka Decl., Ex. G at 17 of 18. Progressive itself, therefore, appears to have recognized the relevance of the requested documents and that producing such documents would not be unduly burdensome. That Progressive has also been compelled to produce documents relating to other claims and lawsuits in *FDIC as Receiver for Silver State Bank* would not seem to excuse its production of relevant documents and compliance with discovery requests in this matter.[16]

     The Court therefore should order Progressive to produce documents responsive to Document Request Nos. 36 and 42 as narrowed.

---

[16] The Court in *FDIC as Receiver for Silver State Bank* does not appear to have faced this specific ESI issue. Rather, the Court appears to have dealt solely with other claims files and lawsuits. In that context, having ordered Progressive to produce numerous claim files relating to the provisions at issue, the Court found the requested "discovery is duplicative and cumulative of discovery the court has compelled with respect to other claims and other lawsuits." *FDIC as Receiver for Silver State Bank*, 2013 WL 5947783, at *11.
    By contrast, in this case, the requested communications are not tied to any specific claims or lawsuits. Rather, FDIC-R seeks discovery regarding Progressive's electronic communications involving the very provisions at issue. Such communications are not limited to Progressive's communications in handling claims, and also may arise in marketing or underwriting policies to its similarly-situated insureds.

**F.      Progressive Should Produce Its Claims Manuals.**

Progressive bases its refusal to produce its claims manuals on the ground that the FDIC acting as receiver for Silver State Bank withdrew its requests for these documents in the context of negotiations over potential discovery compromises.  Progressive omits the fact that the FDIC as Receiver for Silver State Bank repeatedly advised Progressive that it did not, and could not, prejudice the rights of the FDIC in any other cases.

The claims manuals should be produced in this case.  On October 18, 2013, Progressive revealed, for the first time, details of its ESI material.[17]  The information provided by Progressive raised more questions than answered.  For example, Progressive revealed that it did niot search the workstations of certain critical witnesses, claiming that "it was Progressive's policy and practice that employees not store materials on the local hard drives in their computers/workstations" and that "it was Progressive's policy and practice for employees to store materials on the Progressive network."  Ex. 1, Oct. 25 Decl., Ex. G.  Progressive, however, has not provided a copy of any such policies, disclosed whether there are any instances where Progressive's employees did not follow such policies, or advised whether Progressive took any steps to discern whether any files were saved on personal computers/workstations or other media.[18]

---

[17]  The FDIC as Receiver for Silver State Bank withdrew its request before Progressive provided troubling detail regarding its retention of, and search for, relevant documents.  Progressive claims that this detail dates back to the deposition of ABAIS.  However, the deposition testimony itself makes clear that ABAIS's corporate representative was unable to answer many basic questions regarding Progressive's retention, and transfer, of documents.  *See, e.g.,* Ex. 1, Oct. 25 Decl., Ex. N.

[18]  Progressive also refuses to produce email existing at Progressive and instead has only committed to producing email at ABAIS that was selectively transferred from Progressive based on what Progressive's employees deemed "necessary."  Ex. 1, Oct. 25 Decl., Ex. G.  Among other

MORRIS LAW GROUP
900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

Progressive's claims manuals may help answer many of these outstanding questions.

Additionally, in this lawsuit, Progressive contends that a "claim" was not timely made, whereas FDIC-R contends that a "claim" was timely made.  Progressive's claims manual and guidelines may contain information regarding when a claim is considered made under its policy form.  This matter is not at issue in *FDIC as Receiver for Silver State Bank*, and each case demands different discovery.

Progressive also again contends that its claims manuals are not relevant because this is not a "bad faith" action.  Claims handling is one of the primary functions of any insurance company.  Courts frequently permit the discovery of claims guidelines, manuals, and other materials used for guidance or reference by claims handlers.  *Glenfed Dev. Corp. v. Superior Court*, 53 Cal. App. 4th 1113, 1117, 62 Cal. Rptr. 2d 195, 197 (1997) (citing cases); *Olin Corp. v. Cont'l Cas. Co.*, 2:10-CV-00623-GMN, 2011 WL 3847140, at *3 (D. Nev. Aug. 30, 2011) (finding claims file information, including general company-wide manuals, guidelines, and claims-handling procedure "relevant to whether the incident at issue falls within the policy's coverage"); *Silgan Containers v. Nat'l Union Fire Ins.*, C 09-05971 RS LB, 2010 WL 5387748, at *8 (N.D. Cal. Dec. 21, 2010).

In *Glenfed*, the California Court of Appeals reversed a trial court's denial of the policyholders' motion to compel production of an insurer's claims manual.  The insurer, National Union, argued that the

_____

issues, Progressive's email raised questions regarding:  (1) the disposition of Progressive's email servers; (2) the time period any email servers were deleted or destroyed; (3) whether there was any supervision over Progressive employees' transfer of email; (4) how Progressive's employees selected emails to transfer; and (5) whether Progressive's employees received any instructions regarding the transfer of emails.

MORRIS LAW GROUP   900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101   702/474-9400 • FAX 702/474-9422

claims manual was irrelevant because, among other things, it was issued after the policy was issued, the suit did not allege poor claims handling procedures, and the claims manual did not refer to any policy terms. The court stated flatly: "National Union is wrong." *Glenfed*, 53 Cal. App. 4th at 1118, 62 Cal. Rptr. 2d at 198. The court stated that it could not accept the "blanket assertion that there is nothing in the claims manual about policy terms." *Id.* Noting that guidelines and claims manuals "generally provide the criteria for processing claims and the procedure for reporting claims," the court recognized "it makes no sense to suggest that the book designed to serve as the instruction manual for the carrier's employees would be completely silent about policy terms." *Id.* (citation omitted). At a minimum, the court found that the claims manual may show how the insurer understood and intended to apply the standard language used in its policy form, or contain the identity of persons involved in the claims handling process. *Id.* The court noted that the "the claims manual may lead to the discovery of other, relevant evidence that is admissible, and no more is required to justify the demand for its production." *Id.*

Similarly, in *Silgan Container*, the court ordered the insurer to produce claims guidelines. 2010 WL 5387748, at *8. Rejecting the insurer's argument that the requested discovery was irrelevant, the court found that claims "manuals are relevant for coverage claims (not just bad-faith claims)." *Id.* (citation omitted). The court reasoned the requested discovery was relevant because (1) it "can show how the insurer applied the standard language in the claim," (2) it "can be relevant to establish that an ambiguity exists in the policy," and (3) "it can help identify persons involved in

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101
702/474-9400 • FAX 702/474-9422

handling the claim."  *Id.* (citations omitted).  *See also GBTI, Inc. v. Ins. Co. of Pa.*, No. 1:09cv01173, 2010 WL 2942631, at *4 (E.D. Cal. July 23, 2010).[19]

In this case, the requested discovery may be relevant for a number of reasons—only one of which is to answer outstanding issues regarding Progressive's retention of relevant documents.  There is no question that Progressive can produce the requested documents with minimal effort, and Progressive ought to do so.

### G.   Progressive Should Produce Organizational Documents Related to the Structure of Progressive's Underwriting, Marketing, and Claims Departments and the Identification of Progressive's Employees.

Progressive continues to refuse to produce basic documents related to the structure of Progressive's underwriting, marketing, and claims departments.  As set forth in FDIC-R's opening brief, these documents are relevant and will enable FDIC-R to identify specific groups and individuals at Progressive who were involved in the underwriting, marketing, and claims handling of Progressive's Professional Liability Insurance Policies.  These documents are also relevant because they will allow FDIC-R to streamline the discovery process, efficiently proceed with depositions, and save FDIC-R and Progressive time and money.

---

[19]  Progressive relies on *Henderson v. Prop. & Cas. Ins. Co. of Hartford*, 2:12-CV-00149-KJD, 2012 WL 3730533 (D. Nev. Aug. 28, 2012) to support its position that claims manuals are not relevant.  However, in that case, the insured failed to provide any analysis as to how the requested claims manuals were "relevant to a breach of contract claim."  *Id.* at *4.  Progressive also points to a one-paragraph decision from a Florida state court, which found without any analysis that both the claims file and claims manual were not relevant to that first party coverage dispute.  *State Farm Fire & Cas. Co. v. Valido*, 662 So. 2d 1012, 1013 (Fla. Dist. Ct. App. 1995).  As Progressive acknowledges, Nevada courts take a different view on the scope of relevant evidence.  Pl's Opp'n (#76) at 6 (conceding that "information the insurer had in reaching its decision to deny benefits, and its rationale for denying benefits is relevant and discoverable").

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

Rather than discussing the actual relevance of these documents, Progressive seeks to disparage FDIC-R based on unsupported accusations. Progressive contends that FDIC-R will use the discovery "to identify myriad additional persons to depose, possibly multiple times, regardless whether they actually have any relevant information and regardless whether the FDIC already has obtained from other sources any relevant information they may have." Pl's Opp'n (#76) at 14.  FDIC-R obviously rejects these wild accusations.  Progressive should not be permitted to withhold relevant documents based on such baseless assertions.

Progressive simply has no valid objection for refusing to produce relevant, responsive documents and, therefore, the Court should compel Progressive to produce the documents responsive to Document Request Nos. 62, 63, and 67.

### H.   Progressive Should Produce Its Document Retention Policy As Soon as Possible and Within Ten Days of the Court's Order.

Progressive again forced FDIC-R to file a motion to compel Progressive's document retention policy, only to advise the Court that it would produce the requested documents.  FDIC-R seeks an order compelling Progressive to do so as soon as possible and within ten days of the Court's Order.[20]

---

[20]  Progressive claims that FDIC-R recklessly inferred that Progressive destroyed or failed to preserve relevant evidence.  As set forth above, there are numerous questions relating to Progressive's retention of, and search for, relevant documents.  FDIC-R will file a motion in due course if FDIC-R learns through discovery that such a motion is justified.

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA • 300 SOUTH FOURTH STREET • LAS VEGAS, NEVADA 89101

702/474-9400 • FAX 702/474-9422

IV.    CONCLUSION

For these reasons, the Court should grant this motion and order Progressive to produce responsive documents within ten days.

MORRIS LAW GROUP


By    /s/ Robert McCoy
        Robert McCoy, No. 9121
        Joni A. Jamison, No. 11614
        900 Bank of America Plaza
        300 South Fourth Street
        Las Vegas, Nevada  89101

LEE, HONG, DEGERMAN, KANG
& WAIMEY
Eric D. Olson (pro hac vice)
3501 Jamboree Road, Suite 6000
Newport Beach, California  92660

DICKSTEIN SHAPIRO LLP
Andrew M. Reidy (pro hac vice)
Catherine J. Serafin (pro hac vice)
Joseph M. Saka (pro hac vice)
1825 Eye Street NW
Washington, DC  20006

Attorneys for Intervenor Federal
Deposit Insurance Company as Receiver
for Sun West Bank

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of MORRIS LAW GROUP, and that the following documents were served via electronic service: **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SUN WEST BANK'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES FROM PROGRESSIVE CASUALTY INSURANCE COMPANY**

TO:

Lewis K. Loss
Email: lloss@tljlaw.com
Matthew J. Dendinger
Email: mdendinger@tljlaw.com
Richard W. Boone, Jr.
Email: rboone@tljlaw.com
THOMPSON LOSS & JUDGE, LLP
1133 21st Street, NW
Washington, DC  20036

Thomas W. Davis, II
Email: twd@h2law.com
HOWARD & HOWARD
3800 Howard Hughes Parkway
Suite 1400
Las Vegas, Nevada  89169

Attorneys for Plaintiffs

Kevin R. Stolworthy
Email: kstolworthy@armstrongteasdale.com
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway
Suite 200
Las Vegas, Nevada  89169

*Attorneys for Defendants*

Dated this 3rd day of December, 2013.

By:  /s/ Heather Suter

MORRIS LAW GROUP

900 BANK OF AMERICA PLAZA · 300 SOUTH FOURTH STREET · LAS VEGAS, NEVADA 89101

702/474-9400 · FAX 702/474-9422

# Exhibit 2 Filed Under Seal